**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DAVID and RENEE HENRY,** *individually and as guardians and natural parents of* **S.J.K.H,** *a minor* <br><br>      **v.** <br><br> **SCHOOL DISTRICT OF PHILADELPHIA and DANIEL J. LAZAR,** *in his official and individual capacities* | **CIVIL ACTION** <br><br> **NO.  19-1115** |

<u>**MEMORANDUM RE: MOTION TO DISMISS**</u>

Baylson, J.                                                               September 6, 2019

## I.      Introduction

In this case, Plaintiffs David Henry ("Mr. Henry") and Renee Henry ("Mrs. Henry"), both

individually and as guardians and parents of Plaintiff S.J.K.H., a minor, allege that Defendants,

Daniel J. Lazar ("Lazar"), S.J.K.H.'s school principal, and the School District of Philadelphia

("District") violated federal and state law by permitting S.J.K.H. to be bullied and by

discriminating against her on the basis of her race, gender, and disabilities.  The Complaint (ECF

1, "Compl.") advances ten Counts:

1.  **Count I**: Sex-based hostile educational environment in violation of Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681(a) ("Title IX"), on behalf of S.J.K.H. against Defendant District;

2.  **Count II**: Race-based hostile educational environment in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d <u>et seq.</u> ("Title VI"), and 42 U.S.C. § 1981 on behalf of S.J.K.H. against Defendant District;

3.  **Count III**: Disability harassment in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("RA"), and the Americans with Disabilities Act, 42 U.S.C. § 12101, <u>et seq.</u> ("ADA"), on behalf of S.J.K.H. against Defendant District;

4.  **Count IV**: Disability discrimination by disparate treatment in violation of the RA and the ADA on behalf of S.J.K.H. against Defendant District;

5. **Count V**: Race discrimination by disparate treatment in violation of Title VI and § 1981 on behalf of S.J.K.H. against Defendant District;

6. **Count VI**: Sex discrimination by disparate treatment in violation of Title IX on behalf of S.J.K.H. against Defendant District;

7. **Count VII**: State-created danger in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution under 42 U.S.C. § 1983 on behalf of S.J.K.H. against both Defendants;

8. **Count VIII**: Violation of the Pennsylvania Safe Schools Act, 24 P.S. § 13-1301, et seq. ("PSSA"), and the Equal Protection Clause of the Fourteenth Amendment under § 1983 on behalf of S.J.K.H. against both Defendants;

9. **Count IX**: Willful misconduct in violation of the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S.A. § 8541, et seq. ("PSTCA"), on behalf of S.J.K.H. against Defendant Lazar; and

10. **Count X**: Negligent infliction of emotional distress ("NIED") on behalf of Mr. Henry against Defendant Lazar.

Presently before this Court is Defendants' Motion to Dismiss all Counts of the Complaint for failure to exhaust administrative remedies under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief can be granted under Rule 12(b)(6). For the reasons discussed below, the Motion to Dismiss is GRANTED.

## II.  Factual Background

Taking Plaintiffs' allegations as true, the factual background is as follows. Mr. and Mrs. Henry, the parents and guardians of S.J.K.H, reside in Philadelphia, Pennsylvania. (Compl. ¶ 3.) S.J.K.H. is an eleven-year-old, African American female in the fifth-grade class at Albert M. Greenfield School ("Greenfield"), a public school in Philadelphia and a sub-unit of the District. (Id. ¶¶ 4, 8, 6a.)  The District is a government agency that provides public education for Philadelphia residents. (Id. ¶ 5.)  Lazar, a Caucasian man, is Greenfield's principal. (Id. ¶ 6.) S.J.K.H. has attended Greenfield since the 2017-18 school year, when she was in fourth grade. (Id. ¶ 7.)

**A. S.J.K.H.'s Medical Conditions and Individual Educational Plan ("IEP")**

S.J.K.H. has several disabilities, including neurofibromatosis Type 1 with moyamoya; optic glioma; Attention Deficit Hyperactivity Disorder, inattentive; and carotid stenosis on the left side. (<u>Id.</u> ¶ 10.) These disabilities restricted S.J.K.H.'s participation in certain school activities, including those requiring headbutting or chokeholds, such as wrestling, which could cause loss of vision, stroke, or death. (<u>Id.</u> ¶ 11.) Mr. and Mrs. Henry conveyed these limitations "on several occasions" to Greenfield in general; the school nurse; the physical education teacher and S.J.K.H.'s IEP Coordinator, Cheryl Russ ("Russ"); the Greenfield IEP Coordinator; and Lazar. (<u>Id.</u> ¶¶ 12, 17, 31c.) S.J.K.H.'s IEP provides for supplemental learning support outside of the regular educational classroom as well as speech and language therapy. (<u>Id.</u> ¶ 16.)

**B. 2017-18 Interactions with V.M.**

Since the 2017-18 school year, S.J.K.H. suffered physical abuse and bullying by her classmate, V.M., an African American female with Caucasian adopted parents. (<u>Id.</u> ¶¶ 20–21.) Mr. and Mrs. Henry allege that V.M.'s mother is a Greenfield employee. (<u>Id.</u> ¶ 22.) V.M. physically abused, bullied, and harassed S.J.K.H. "a number of times" at school, including, but not limited to, threatening to "slit [S.J.K.H.'s] throat" on November 6, 2017 and January 3, 2018; taking S.J.K.H's sweater and lunch; punching S.J.K.H. in the stomach on January 3, 2018; destroying S.J.K.H.'s white board eraser; leaving bruises on S.J.K.H.'s body; and causing S.J.K.H. anxiety and a fear of school. (<u>Id.</u> ¶ 23.) S.J.K.H. reported these events to Greenfield teachers and/or administrators but was not taken seriously. (<u>Id.</u> ¶ 24.) No one at Greenfield contacted Mr. or Mrs. Henry about these incidents. (<u>Id.</u> ¶ 25.)

Once Mr. and Mrs. Henry learned of V.M.'s bullying and harassment, they reported these issues to S.J.K.H.'s teachers, Lazar, and "others" to no avail. (<u>Id.</u> ¶ 26.) Prior to V.M.'s alleged

attacks on S.J.K.H., Lazar and other Greenfield administrators and faculty, including V.M.'s parents, knew of V.M.'s abusive behavior, but did "little" to stop V.M.'s aggression toward S.J.K.H. (Id. ¶ 27.)

### C. 2018-19 Interactions with N.S.

During the 2018-19 school year, S.J.K.H. was bullied, harassed, and physically abused by a Caucasian, male classmate, N.S. (Id. ¶¶ 28–29.) N.S. had an IEP that required him to have a one-to-one aide with him at all times at school. (Id. ¶ 30.) On five separate occasions in October 2018, N.S. physically attacked S.J.K.H. at school. (Id. ¶ 31.)

First, on October 9, 2018, when N.S.'s aide was not present, N.S. choked S.J.K.H. during homeroom. (Id. ¶ 31a.) S.J.K.H. reported the incident to the homeroom teacher but was ignored. (Id.) Neither the homeroom teacher nor Russ, who was standing in the doorway, intervened or reported the incident. (Id.)

Then, on October 15, 2018, N.S. choked S.J.K.H. from behind during math class. (Id. ¶ 31b.) Again, N.S.'s one-to-one aide was not with him. (Id.) The math teacher did not see what had happened, and S.J.K.H. did not report the incident, but another student asked S.J.K.H. if she was okay, and she said that she was not. (Id.) After S.J.K.H. told Mr. and Mrs. Henry what had happened, Mr. Henry took S.J.K.H. to school and N.S.'s one-to-one aide apologized. (Id.) Mr. Henry reported both the October 9 and October 15 attacks to Lazar, who was unaware of what had happened but said that he would investigate. (Id.) Three days later, on October 18, S.J.K.H. went to the Children's Hospital of Philadelphia ("CHOP") because of persistent hip pain and reported the attacks to her doctor. (Id.)

The next day, while in music class on October 19, 2018, N.S. stated that he took a train during the summer and killed the black female train conductor, to which the music teacher

responded, "[W]e are not going to talk about killing people." (Id. ¶ 31c.) N.S. then pushed S.J.K.H. down onto the carpet, pushed on her stomach, and then sat on her stomach, but the music teacher did nothing to help. (Id.) N.S.'s aide got N.S. off of S.J.K.H. (Id.) At that time, the homeroom teacher happened to walk by and directed S.J.K.H. to go to the school nurse, who gave S.J.K.H. an icepack but did not call Mr. or Mrs. Henry. (Id.) Instead, Russ called Mrs. Henry and told her that S.J.K.H. and N.S. were "wrestling" in music class, but she did not mention that S.J.K.H. went to the nurse. (Id.) Russ stated, "You need to tell your daughter to stay away from this boy. He has really bad thoughts about her. And it goes well beyond liking her." (Id.) During the call, Mrs. Henry learned that N.S. is autistic and that Lazar changed N.S.'s homeroom effective immediately. (Id.)

Lazar followed up with Mr. and Mrs. Henry and assured them that he would make sure that N.S. and S.J.K.H. would not "cross paths." (Id.) Specifically, on October 21, 2018, Lazar emailed Mr. and Mrs. Henry to inform them that "[w]e believe that [N.S.] was playing out a fantasy in his head that carried over into the real world," and that Greenfield "quickly moved him" to another class. (Id.)

Then, on the morning of a fifth-grade field trip on October 22, 2018, Mr. Henry spoke to Lazar about S.J.K.H.'s physical safety because of N.S., and three teachers assured Mr. Henry that they would watch N.S. (Id. ¶ 31d.) When the students returned to school, N.S. pushed S.J.K.H. down on the schoolyard ground with his forearm firmly on her neck, causing S.J.K.H. to bang her head hard on the ground. (Id.) N.S.'s one-to-one aide was not present. (Id.) A Greenfield teacher ran to pull N.S. off of S.J.K.H., but Greenfield did not provide S.J.K.H. with medical attention. (Id.) Neither Lazar nor anyone else at Greenfield informed Mr. or Mrs. Henry or filed a report. (Id.) The next day, Lazar assured Mr. Henry that Greenfield scheduled N.S.'s arrival for fifteen

minutes after school started and his departure for ten minutes before school ended so that S.J.K.H. and N.S. would not cross paths. (Id.) Mr. Henry requested that Greenfield implement a safety plan for S.J.K.H.'s physical protection, but Lazar refused. (Id.)

Finally, on October 26, 2018, while S.J.K.H. and Mr. Henry were in line to buy tickets for a school dance, N.S. came from behind and lifted S.J.K.H. in a chokehold when N.S.'s aide was not present. (Id. ¶ 31e.) Mr. Henry removed N.S.'s grip from S.J.K.H.'s neck, but not before she sustained marks on her neck. (Id.) Greenfield did not offer S.J.K.H. medical assistance. (Id.) Though Lazar was fewer than ten feet away, he did nothing to help. (Id.) Mr. Henry called the police and filed a report. (Id.) Lazar failed to suspend N.S.; instead, N.S.'s mother kept him home for more than two weeks. (Id. ¶¶ 31e, 36.)

Later that day, Mrs. Henry took S.J.K.H. to CHOP because S.J.K.H. continued to have neck pain and redness. (Id.) Doctors at CHOP diagnosed S.J.K.H. with Post Traumatic Stress Disorder ("PTSD") due to prolonged physical abuse, bullying, and harassment at Greenfield. (Id.)

### D. Mr. and Mrs. Henry's Requests Regarding S.J.K.H.

At some point thereafter, Mr. and Mrs. Henry made "multiple complaints" of bullying, harassment, and physical abuse to the District and Greenfield administrators and faculty, including the CEO and Superintendent of the District, the District's Assistant Superintendent of "Learning Network 3," and others, but N.S. remained at Greenfield. (Id. ¶¶ 32–33.) On October 29, 2018, Mr. and Mrs. Henry met with Lazar and again requested a physical protection plan for S.J.K.H. that would include a one-to-one aide for S.J.K.H. and N.S.'s immediate transfer, but Lazar responded, "Absolutely not." (Id. ¶ 34.)

The next day, on October 30, 2018, Mrs. Henry submitted an online bullying and harassment complaint with the District, to which the District replied that Lazar investigated and

found N.S.'s attacks on S.J.K.H. were a "manifestation of his disability." (Id. ¶ 35.) Mr. and Mrs. Henry filed an appeal on November 15, 2018. (Id.) The following day, Mr. and Mrs. Henry met with Lazar and the liaison to the District's Special Education Administrator to request a safety plan for S.J.K.H., but Lazar would not approve it. (Id. ¶ 38.) Mr. and Mrs. Henry again met with Lazar and Greenfield teachers on November 26, 2018 to discuss the impact of V.M. and N.S.'s attacks on S.J.K.H. in light of her disabilities. (Id. ¶ 40.)

As of December 2018, there was no resolution despite an additional meeting with the School Board, Lazar, and Greenfield faculty, as well as a letter from Mrs. Henry to the District Superintendent complaining about the District's failure to reasonably accommodate S.J.K.H.'s disabilities. (See id. ¶¶ 41–43.) However, the following month, on or about January 23, 2018, Mrs. Henry received a text message from Lazar stating that N.S. was no longer at Greenfield. (Id. ¶ 44.) The next day, on January 24, 2019, S.J.K.H. suffered a mini-stroke and has been out of school on a full-time basis ever since. (Id. ¶ 45.) Plaintiffs allege that S.J.K.H. suffered "adverse physical traumatic responses," including the mini-stroke, PTSD, panic attacks, and a nightmare, because of Defendants' conduct. (Id. ¶¶ 37, 53, 63, 70, 75, 80, 85, 94, 106, 112.)

### III. Procedural History

Plaintiffs filed the Complaint in this case on March 18, 2019 (ECF 1). On May 20, 2019, Defendants filed the instant Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) (ECF 3, "Mot.") Plaintiffs filed a Response in opposition to the Motion on June 3, 2019 (ECF 4, "Resp.").

### IV. Legal Standard

#### A. Rule 12(b)(1)

When considering a motion to dismiss under Rule 12(b)(1), the Court must determine whether Defendants alleged a facial or facial deficiency. Davis v. Wells Fargo, 824 F.3d 333, 346

(3d Cir. 2016).  A facial attack concerns "'an alleged pleading deficiency' whereas a factual attack concerns 'the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'"  <u>CNA v. United States</u>, 535 F.3d 132, 139 (3d Cir. 2008) (alterations in original) (quoting <u>U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.</u>, 473 F.3d 506, 514 (3d Cir. 2007)).

In this case, Defendants' challenge is facial because the Motion "concerns an alleged pleading deficiency" with respect to Plaintiffs' failure to exhaust administrative remedies.  <u>See Davis</u>, 824 F.3d at 346.  Further, Defendants filed the Motion before filing an Answer to the Complaint or conducting discovery.  <u>See</u> <u>Askew v. Church of the Lord Jesus Christ</u>, 684 F.3d 413, 417 (3d Cir. 2012) ("As the defendants had not answered and the parties had not engaged in discovery, the first motion to dismiss was facial."); <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F.2d 884, 891–92 (3d Cir. 1977) (noting that a factual attack "may occur at any stage of the proceedings, from the time the answer has been served until after the trial has been completed").  When addressing a facial challenge, "the Court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff," similar to a Rule 12(b)(6) motion.  <u>Constitution Party of Pa. v. Aichele</u>, 757 F.3d 347, 358 (3d Cir. 2014) (quoting <u>In re Schering Plough Corp.</u>, 678 F.3d 235, 243 (3d Cir. 2012)).

**B.  Rule 12(b)(6)**

To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  The Court in <u>Iqbal</u> explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted.  <u>Iqbal</u>, 556 U.S. at 678, 684.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555).

## V.     Discussion

### A. Parties' Contentions

#### i.     Defendants' Motion to Dismiss

In the Motion to Dismiss, Defendants contend that Plaintiffs' federal claims against the District (Counts I–VIII) must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) because Plaintiffs failed to exhaust their administrative remedies under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. ("IDEA").  (Mot. at 12–18.)[1]

Alternatively, Defendants advance the following reasons why Counts I–VIII should be dismissed under Rule 12(b)(6).

First, Defendants contend that Plaintiffs fail to state valid a Title IX claim based on a hostile educational environment or disparate treatment (Counts I and IV).  As to Plaintiffs' Title IX hostile educational environment claim, Defendants argue that the Complaint fails to plead sufficient facts to establish that the alleged harassment was sexual in nature or that the District's response to the alleged harassment was deliberately indifferent.  (Id. at 21–24.)  Regarding the Title IX disparate treatment claim, Defendants contend that the Complaint does not allege the District treated S.J.K.H. less favorably than male students when responding to complaints of bullying.  (Id. at 25.)

Second, Defendants argue that Plaintiffs fail to state a hostile educational environment or disparate treatment claim under Title VI (Counts II and V).  According to Defendants, Plaintiffs cannot state a valid Title VI hostile educational environment claim because the Complaint does

---

[1] The Court notes that Counts VII and VIII–Plaintiffs' § 1983 claims–are brought against both the District and Lazar.

not allege any facts establishing that S.J.K.H. was bullied because of her race. (Id. at 26–27.) With respect to the Title VI disparate treatment claim, Defendants argue that the Complaint fails to allege the District's response to the alleged bullying was connected to S.J.K.H.'s race. (Id. at 28.) Nor does the Complaint advance any allegations that similarly situated, non-African American children were treated more favorably, Defendants contend. (Id.)

Third, Defendants argue that Plaintiffs' § 1981 claims (Counts II and V) fail as a matter of law because § 1981 does not provide for a direct right of action against the District. (Id.) Defendants contend that § 1983 provides Plaintiffs' exclusive remedy against the District. (Id.)

Fourth, Defendants argue that Plaintiffs' hostile educational environment and disparate treatment claims under the ADA and the RA (Counts III and IV) must be dismissed for the same reasons as Plaintiffs' race- and gender-based hostile educational environment and disparate treatment claims. (Id. at 29.) According to Defendants, Plaintiffs fail to state an ADA or RA claim because the Complaint does not allege any facts demonstrating that S.J.K.H.'s disabilities played any part in the District's response to her bullying complaints or that similarly situated, non-disabled students were treated more favorably. (Id.)

Next, Defendants turn to Plaintiffs' § 1983 claims against both Defendants (Counts VII and VIII). Defendants argue that Plaintiffs' claim of state-created danger (Count VII) must be dismissed because the Complaint does not allege affirmative action on the District's part, as required to state a valid claim under this theory. (Id. at 31–32.) As to Plaintiffs' § 1983 claim based on the PSSA and the Fourteenth Amendment (Count VIII), Defendants contend that to the extent that this claim is based on a violation of the PSSA, it must be dismissed because claims based on violations of state law are not permitted under § 1983. (Id. at 32.) Defendants argue that Plaintiffs' Fourteenth Amendment claim under § 1983 in Count VIII must also be dismissed

because Plaintiffs have failed to establish a custom, policy, or practice of the District, identify a policymaker, or demonstrate deliberate indifference, which are necessary elements of a valid municipal liability claim under § 1983.  (Id. at 32–34.)

Defendants then proceed to argue that regardless of whether Counts I–VIII are dismissed under Rule 12(b)(1) or 12(b)(6), the state law claims against Lazar (Counts IX and X) must be dismissed under Rule 12(b)(6) because Lazar is immune from liability under the PSTCA.  (Id. at 36–37.)  Defendants also contend that even if Lazar were not immune from liability, Mr. Henry's NIED claim (Count X) cannot withstand dismissal because the Complaint fails to allege that Mr. Henry suffered physical harm, as required to state a valid NIED claim.  (Id.)

### ii.    Plaintiffs' Response to Defendants' Motion to Dismiss

In response, Plaintiffs argue that the claims against the District (Counts I–VIII) should not be dismissed for failure to exhaust administrative remedies because S.J.K.H. suffered non-educational harms that cannot be remedied by the IDEA.  (Resp. at 6.)  Plaintiffs further contend that exhaustion is not required because it would be futile and inadequate and S.J.K.H.'s physical and emotional injuries may cause her irreparable harm.  (Id. at 9–12.)

Plaintiffs argue, in the alternative, that all Counts withstand dismissal under Rule 12(b)(6).  However, Plaintiffs voluntarily withdraw their claims against the District under § 1981 in Counts II and V of the Complaint.  (Id. at 12 n.6.)

Turning to Plaintiffs' Title IX claims (Counts I and VI), Plaintiffs argue that the Complaint states a hostile educational environment claim based on student-on-student harassment because the District's actions were clearly unreasonable.  (Id. at 12–13.)  Regarding the disparate treatment claim, Plaintiffs argue that the Complaint adequately alleges that N.S., a similarly situated, male

student, was treated more favorably than S.J.K.H.  (Id. at 16–17.)  Plaintiffs contend that the same analysis applies to the Title VI claims (Counts II and V).  (Id. at 17.)

Plaintiffs then argue that the Complaint states plausible claims under the ADA and RA (Counts III and IV) by alleging that Defendants rejected Mr. and Mrs. Henry's requests that N.S. be removed from Greenfield and that S.J.K.H. be provided with a one-to-one aide.  (Id. at 18–19.)

Next, Plaintiffs seek to refute Defendants' arguments that Plaintiffs' § 1983 claims (Counts VII and VIII) must be dismissed.  Plaintiffs argue that the state-created danger exception permits S.J.K.H. to maintain a cause of action in this case, as Plaintiffs plausibly allege that Defendants used their authority to put S.J.K.H. in danger.  (Id. at 20–21.)  Plaintiffs then assert that to the extent that Count VIII fails as a matter of law by alleging a violation of state law under § 1983, Plaintiffs withdraw that claim.  (Id. at 21 n.10.)  However, Plaintiffs clarify that they are bringing this claim against Lazar only in his official capacity because he failed to follow the PSSA's reporting requirements, depriving S.J.K.H. of her Fourteenth Amendment rights.  (Id. at 21.)

Lastly, Plaintiffs turn to the state claims against Lazar: the PSTCA and NIED claims (Counts IX and X).  Plaintiffs argue that Lazar is not immune from liability under the PSTCA because Count IX alleges that Lazar engaged in "willful misconduct," which is an exception to the PSTCA's protections.  (Id. 22–23.)  With respect to Count X, Plaintiffs argue that Mr. Henry has stated a plausible NIED claim because he witnessed N.S. choke S.J.K.H. on October 26, 2018. (Id. at 23–24.)  According to Plaintiffs, a plaintiff may state a valid NIED claim without alleging physical injury under controlling Pennsylvania caselaw.  (Id.)

**B.  Analysis**

As set forth above, Defendants argue that Plaintiffs' federal claims against the District (Counts I–VIII) must be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)

for failure to exhaust administrative remedies under the IDEA, and that Plaintiffs' state law claims against Lazar (Counts IX and X) should be dismissed under Rule 12(b)(6). Alternatively, Defendants contend that all Counts should be dismissed under Rule 12(b)(6). The Court addresses each challenge in turn.

### i. Rule 12(b)(1): Federal Claims Against the District (Counts I–VIII) and Lazar (Counts VII and VIII)

#### 1. IDEA Exhaustion Requirement: Statutory Scheme

The objective of the IDEA is "ensure that all children with disabilities have available to them a free appropriate public education [('FAPE')] that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). A FAPE consists of "'special education and related services'–both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that instruction." Fry v. Napoleon Cmty. Sch., 137 S.Ct. 743, 748–49 (2017) (quoting §§ 1410(9), (26), (29)). An IEP "serves as the 'primary vehicle' for providing each child with the promised FAPE." Fry, 137 S.Ct. at 749 (citation omitted).

Because parents and school representatives may disagree over the provision of a FAPE or IEP, "[s]tates must comply with detailed procedures for identifying, evaluating, and making placements for students with disabilities, as well as procedures for developing IEPs." Batchelor v. Rose Tree Media Sch. Dist., 759 F.3d 266, 271–72 (3d Cir. 2004); Fry, 137 S.Ct. at 749. At the outset, "a dissatisfied parent may file a complaint as to any matter concerning the provision of a FAPE with the local or state educational agency (as state law provides)." Fry, 137 S.Ct. at 749 (citing § 1415(b)(6)). That complaint "generally triggers a '[p]reliminary meeting' involving the contending parties, . . . [or] the parties may instead (or also) pursue a full-fledged mediation process[.]" Fry, 137 S.Ct. at 749 (quoting §§ 1415(f)(1)(B)(i), (e)). If the dispute is not resolved,

"the matter proceeds to a 'due process hearing' before an impartial hearing officer." Fry, 137 S.Ct. at 749 (quoting § 1415(f)(1)(A)). If the hearing is conducted at the local level, parents may appeal the ruling to the state agency. Fry, 137 S.Ct. at 149 (citing § 1415(g)). Finally, "'[a]ny party aggrieved by the findings and decision made under' the IDEA has the right to bring a civil action . . . in a federal district court[.]" Defeo v. Rose Tree Media Sch. Dist., No. 06-755, 2007 WL 576317, at *2 (E.D. Pa. Feb. 20, 2007) (Baylson, J.) (quoting § 1415(i)(2)(A)).

In general, "exhausting the IDEA's administrative process is required in order for the statute to 'grant[ ] subject matter jurisdiction to the district court [ ].'" Batchelor, 759 F.3d at 272 (alterations in original) (quoting Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778 (3d Cir. 1994)). Where a plaintiff does not directly assert claims under the IDEA, as is the case here, § 1415(*l*) of the IDEA provides that the plaintiff "exhaust the IDEA's procedures before filing an action under the ADA, the Rehabilitation Act, or similar laws when (but only when) her suit 'seek[s] relief that is also available' under the IDEA." Fry, 137 S.Ct. at 752 (alteration in original) (quoting § 1415(*l*)). This requirement exists to "bar[] plaintiffs from circumventing [the] IDEA's exhaustion requirement by taking claims that could have been brought under IDEA and repackaging them as claims under some other statute–*e.g.*, section 1983, section 504 of the Rehabilitation Act, or the ADA." Batchelor, 759 F.3d at 272–73 (alteration in original) (citation omitted).

The Supreme Court in Fry interpreted § 1415(*l*) to require exhaustion if "the substance, or gravamen, of the plaintiff's complaint" seeks relief for the denial of a FAPE. Fry, 137 S.Ct. at 752, 755. Fry set forth a framework to assist courts in making this determination. The Supreme Court explained that the IDEA's exhaustion requirement applies if two conditions occur: (1) the plaintiff could not have brought the same claim if the alleged conduct occurred at a public facility

that was not a school, and (2) an adult visiting the school could not have advanced the same claim. 137 S.Ct. at 756–57.  Another clue, the Supreme Court stated, is that parents began to exhaust the IDEA's administrative process by filing a complaint but then shifted midstream to judicial proceedings.  Id. at 757.

The Third Circuit has since interpreted the Fry framework to apply both to individual claims included in a complaint and the complaint in its entirety.  Wellman v. Butler Area Sch. Dist., 877 F.3d 125, 132–33 (3d Cir. 2017) (not cited by either party).  In light of this framework, the Court turns to determine whether Plaintiffs' federal claims against the District (Counts I–VIII) must be dismissed under Rule 12(b)(1).

## 2.  IDEA Exhaustion Requirement: Application

As noted above, Defendants argue that Counts I–VIII are subject to the IDEA's procedural requirements because the Complaint alleges that S.J.K.H. suffered educational injuries due to bullying she endured and Defendants' failure to amend S.J.K.H.'s IEP to allow for a one-to-one aide.  (Mot. at 16–18.)  Plaintiffs, on the other hand, argue that the Complaint alleges that S.J.K.H. suffered non-educational injuries that cannot be remedied by the IDEA.  (Resp. at 8–9.)  According to Plaintiffs, Mr. and Mrs. Henry's requests for a "safety plan," including a one-to-one aide, have nothing to do with S.J.K.H.'s IEP.  (Id.)  In support of their positions, both parties seek to analogize the instant case to decisions from this District that preceded Fry.

The Court concludes that application of the Fry test to Plaintiffs' Complaint and each of their federal claims against the District demonstrates that Plaintiffs' grievances arise from Defendants' alleged failure to accommodate S.J.K.H.'s physical conditions or fulfill her educational needs.  Though the Complaint does not use the term "FAPE," the Complaint does

allege that Defendants failed to provide S.J.K.H. with a "safe, nurturing and/or positive environment," as promised by Lazar's stated vision for Greenfield. (Compl. ¶¶ 18–19.)

Unlike in <u>Fry</u>, where the complaint alleged only disability discrimination without making any reference to the adequacy of educational services provided, here, the Complaint focuses on the District's failure to provide S.J.K.H. with a one-to-one aide at school or to ensure that S.J.K.H. was adequately protected from bullying on school grounds. The facts alleged in the Complaint further pertain to Mr. and Mrs. Henry's requests for specific accommodations for S.J.K.H. to ensure that she would not be subjected to treatment that would aggravate her disabilities, including that Greenfield restrict S.J.K.H.'s participation in certain physical activities, provide S.J.K.H. with a one-to-one aide, and remove N.S. from Greenfield. (<u>Id.</u> ¶¶ 10–12, 32–38, 40–43.) Plaintiffs allege that Defendants' refusal to provide these accommodations caused S.J.K.H.'s physical and emotional injuries. (<u>Id.</u> ¶¶ 11–12, 31, 34, 38, 42–43.)

These factual allegations are incorporated by reference into each Count of the Complaint, each of which also sets forth additional allegations. Plaintiffs specifically allege in Counts I and II, which claim that S.J.K.H. was subjected to a hostile educational environment in violation of Titles VI and IX, that the District "deprived [S.J.K.H.] of access to the educational opportunities and benefits provided by the District." (Id. ¶¶ 52, 62.) As pleaded, Defendants' alleged refusal to ensure that S.J.K.H. was protected from V.M. and N.S., including by failing to maintain the one-to-one aide required by N.S.'s IEP or provide S.J.K.H. with a one-to-one aide under a "safety plan," amounts to a failure to accommodate S.J.K.H. so that she could benefit from the educational experience at Greenfield. <u>See</u> <u>Wellman</u>, 566 F.3d at 134. These allegations "would not have occurred outside the school setting and . . . a nonstudent could not (and would not) have 'pressed essentially the same grievance.'" <u>Id.</u> at 133 (quoting <u>Fry</u>, 137 S.Ct. at 756). Though the remaining

Counts against the District (Counts III, IV, V, VI, VII, and VIII) do not specifically allege that S.J.K.H. was deprived of educational opportunities, they are based on the same factual allegations as Counts I and II.  See Blunt v. Lower Merion Sch. Dist., No. 07-3100, 559 F. Supp. 2d 548, 560–61 (E.D. Pa. 2008) (Bartle, J.) (noting that ADA and RA claims were subject to the IDEA exhaustion requirement because they were based on the same allegations as an IDEA claim), aff'd on other grounds, 767 F.3d 247 (3d Cir. 2014).

Moreover, the history of the proceedings indicates that the gravamen of the claims against the District is the denial of a FAPE.  See Fry, 137 S.Ct. at 757.  Though Plaintiffs do not allege that they filed a complaint with a local or state agency, the Complaint does allege that Mrs. Henry filed an online complaint with the District in October 2018, and that Mr. and Mrs. Henry subsequently filed an appeal from the results of Lazar's investigation.  (Compl. ¶ 35.)  The Complaint further alleges that in October, November, and December 2018, Mr. and Mrs. Henry met with Lazar, the liaison to the District's Special Education Administrator, and the School Board, among others, to discuss a safety plan for S.J.K.H. and N.S.'s attendance at school.  (Id. ¶¶ 31–32, 38, 40–43.)  In the Response, Plaintiffs characterize these actions as attempts to "provide a safe educational environment for [S.J.K.H.][,]" even if separate from her IEP.  (Resp. at 11.)  Therefore, the Court concludes that the federal claims in Counts I–VIII are subject to the IDEA's exhaustion requirement.

### 3.  IDEA Exhaustion Requirement: Exceptions

Plaintiffs seek to save Counts I–VIII from dismissal by arguing that exceptions to the exhaustion requirement apply.  (Id. at 9–11.)  The Third Circuit has recognized four exceptions to the exhaustion requirement: "(1) exhaustion would be futile or inadequate; (2) the issue presented is a purely legal question; (3) the administrative agency cannot grant relief; and (4) exhaustion

would cause severe or irreparable harm." <u>D.E. v. Cent. Dauphin Sch. Dist.</u>, 765 F.3d 260, 275 (3d Cir. 2014) (citing <u>Komninos</u>, 13 F.3d at 778). "The party seeking to be excused from exhaustion bears the burden of establishing an exception." <u>M.M. v. Paterson Bd. of Educ.</u>, 736 F. App'x 317, 320 (3d Cir. 2018) (citing <u>Honig v. Doe</u>, 484 U.S. 305, 327 (1988)). Plaintiffs argue that the first and fourth exceptions apply in this case. The Court disagrees.

As to the first exception, exhaustion is considered futile where the plaintiff previously exhausted administrative remedies, the factual record is sufficiently developed, the plaintiff seeks remedies unavailable under the IDEA, or there are no educational issues to be resolved because the only remaining issue is a measure of damages. <u>See</u> <u>Batchelor</u>, 759 F.3d at 280–81 (collecting cases). Plaintiffs contend that exhaustion would be futile because they complained to and met with educational professionals to resolve their requests for accommodations for S.J.K.H., and they filed a police report, to no avail. (Resp. at 10–11.)

The Court is not persuaded by Plaintiffs' argument. As judges in this District have recognized, "the futility exception does not apply merely because a plaintiff's previous meetings with school administrators were not successful." <u>Ruiz v. Strange</u>, No. 15-2112, 2015 WL 7734131, at *3 (E.D. Pa. Dec. 1, 2015) (Padova, J.) (concluding that exhaustion would not have been futile where the school refused the parent's request for a hearing to appeal the decision not to make reasonable accommodations for her son's learning disability). Further, while Plaintiffs seek damages, which are unavailable under the IDEA, Plaintiffs also request attorney's fees, costs, and "such other relief as this Court deems proper," which the IDEA authorizes district courts to grant. <u>See</u> <u>Batchelor</u>, 759 F.2d at 272. The Third Circuit held that the futility exception did not apply where a complaint similarly not only sought relief unavailable under the IDEA, but also "such other relief as this court deems just and appropriate." <u>Id.</u> at 276.

This Court also concludes that the fourth exception, known as the "emergency situation exception," does not apply. See Komninos, 13 F.3d at 779. Plaintiffs argue that they initiated this action promptly due to the severe and irreparable nature of S.J.K.H.'s injuries. (Resp. at 11–12.) This assertion does not establish that this exception applies because Plaintiffs do not allege that S.J.K.H. would suffer irreversible damage in the absence of damages, attorney's fees, costs, or "such other relief as this Court deems proper" while the IDEA administrative process is pending. See Komninos, 13 F.3d at 779 ("Plaintiffs must provide a sufficient preliminary showing that the child will suffer serious and irreversible mental or physical damage . . . before the administrative process may be circumvented.").

In sum, because the federal claims in Counts I–VIII fall within the ambit of the IDEA, Plaintiffs did not utilize the IDEA administrative process, and Plaintiffs have failed to meet their burden of establishing that any exception to the exhaustion requirement applies, this Court must dismiss these Counts for lack of subject matter jurisdiction under Rule 12(b)(1). However, the Court will do so without prejudice so that Plaintiffs can exhaust administrative remedies.

### ii. Rule 12(b)(6): State Law Claims Against Lazar (Counts VIII, IX, and X)

As set forth above, Defendants also move to dismiss the state law claims against Lazar under Rule 12(b)(6) (Counts IX and X). To the extent that Count VIII alleges violations of the PSSA, the Court construes this Count as a state law claim subject to dismissal under Rule 12(b)(6).

Defendants argue that Count VIII should be dismissed because Plaintiffs impermissibly seeks to employ § 1983 to remedy alleged violations of state law. (Mot. at 32–36.) Defendants further contend that Plaintiffs' PSTCA and NIED claims in Counts IX and X fail as a matter of law because Lazar is immune from liability under the PSTCA. (Id. at 36–38.)

With respect to Count VIII, the Court agrees with Defendants that Plaintiff cannot bring a § 1983 claim based on violations of state law. See Elkin v. Fauver, 969 F.2d 48, 52 (3d Cir. 1992) ("An alleged violation of state law . . . does not state a claim under section 1983."). As a result, to the extent that Count VIII alleges violations of the PSSA under § 1983, it is dismissed with prejudice pursuant to Rule 12(b)(6). The Court does not reach any conclusions about the merits of Plaintiffs' § 1983 claim based on alleged violations of the Equal Protection Clause of the Fourteenth Amendment in the same Count.[2]

As to Plaintiffs' "willful misconduct" claim under the PSTCA (Count IX) and Mr. Henry's NIED claim (Count X), disposition of these claims under Rule 12(b)(6) will be stayed until Plaintiffs have exhausted administrative remedies under the IDEA.

## VI.   Conclusion

Defendants' Motion to Dismiss will be granted. Counts I–VII and the Fourteenth Amendment claim under § 1983 in Count VIII will be dismissed, without prejudice, for failure to exhaust IDEA administrative remedies under Rule 12(b)(1). To the extent that Count VIII alleges a § 1983 claim based on violations of the PSSA, it will be dismissed, with prejudice, under Rule 12(b)(6). The Court does not reach any conclusions at this time as to the merits of Plaintiffs' federal claims (Counts I–VII and the § 1983 claim based on the Fourteenth Amendment in Count VIII), or Plaintiffs' PSTCA and NIED claims (Counts IX and X). The case will be placed in

---

[2] Defendants characterize Count VIII as a Monell claim. (See Mot. at 32–33.) The Court notes that if Plaintiffs attempt to bring a Monell claim under § 1983 against both Defendants after exhausting administrative remedies, the Court may be inclined to dismiss the official-capacity claim against Lazar for redundancy. See Moore v. City of Phila., No. 14-133, 2014 WL 859322, at *3 (E.D. Pa. Mar. 5, 2014) (Baylson, J.) (exercising discretion to dismiss official-capacity Monell claims against prison officials for redundancy where the same claims were brought against the City).

suspense pending further filings reflecting Plaintiffs' exhaustion of the IDEA administrative process.

An appropriate Order follows.

O:\CIVIL 19\19-1115 Henry v School District\19cv1115 Memo re Mot. to Dismiss.docx