**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DAVID AND RENEE HENRY,** individually and as guardians and parents of S.J.K.H, a minor<br><br>v.<br><br>**SCHOOL DISTRICT OF PHILADELPHIA and DANIEL J. LAZAR, in his official and individual capacities** | **CIVIL ACTION**<br><br>**NO. 19-1115** |

**MEMORANDUM RE: MOTION TO DISMISS**

**Baylson, J.**                                                                                          **October 27, 2020**

### I.   Introduction

The Henrys, on behalf of themselves and their daughter S.J.K.H., (collectively, "Plaintiffs") have sued S.J.K.H.'s school district and principal for injuries stemming from a series of serious attacks that S.J.K.H. faced at school.  The School District of Philadelphia and Daniel Lazar ("District" and "Lazar" respectively; collectively "Defendants") have moved to dismiss nine counts — Counts II through XI.  ECF 11.  These counts fall roughly into four categories: (1) creation of a hostile education environment ("HEE") by failing to prevent bullies from harassing S.J.K.H. based on her sex/race/disabilities, (2) discriminatory treatment based on her sex/race/disabilities through disparate treatment, (3) due process claims of (a) a state created danger and (b) Monell claim of the District's policies or customs harming Plaintiffs, and (4) tort claims against Lazar.

The Court will address each of these categories in turn.  For the reasons given below, the Court will DENY Defendants' Motion to Dismiss as to Counts II, V, VI, VII, and IX; GRANT it

1

as to Counts III, IV, and VIII by dismissing them without prejudice and with leave to amend their complaint; and GRANT it as to Counts X and XI by dismissing them with prejudice.

## II.     Factual Background

Assuming as true Plaintiffs' allegations, Plaintiffs are David and Renee Henry ("Parents") and their daughter S.J.K.H.  Am. Compl. ¶¶ 3, 4.  S.J.K.H. is an African-American female with multiple disabilities.  Id. at ¶¶ 8,9.  She is a minor.  Id. at ¶ 4.  As a result of S.J.K.H.'s disabilities, she is at a heightened risk from certain physical activities that might include head-butting or choke holds, as they could trigger serious harms such as blindness, strokes, or death.  Id. at ¶ 11.

S.J.K.H. previously attended elementary school at Albert M. Greenfield School ("Greenfield"), a public school in the District.  Id. at ¶ 4.  Parents have informed Greenfield's employees, including Lazar, of S.J.K.H.'s disabilities on several occasions.  Id. at ¶ 12.  At her school, S.J.K.H. participated in an Individualized Education Program, or IEP, which provides supplemental learning support for students with specialized learning needs.  Id. at ¶ 16.

S.J.K.H. has been "physically abused, bullied, and harassed" by other students at Greenfield.  Id. at ¶ 23.  One of these students is V.M., an African-American female who was adopted by Caucasian parents.  Id. at ¶ 21.  V.M. bullied S.J.K.H. on numerous occasions throughout the 2017–2018 school year, including threatening to slit her throat, taking her clothes and lunch, punching her in the stomach, destroying her whiteboard eraser, leaving bruises on her body, and causing her general fear and anxiety.  Id. at ¶ 23.  S.J.K.H. reported each of these instances to Greenfield employees, but no one contacted Parents about them.  Id. at ¶¶ 24, 25.  When Parents learned of these incidents, they also reported them to Greenfield employees, including S.J.K.H.'s teachers and Lazar.  Id. at ¶ 26.  Lazar and the other school administrators did little to stop V.M.'s ongoing harassment of S.J.K.H.  Id. at ¶ 27.

In the 2018–2019 school year, another student, N.S., began bullying, harassing, and physically abusing S.J.K.H. Id. at ¶ 28. N.S. is a Caucasian male student, who also has disabilities. Id. at ¶¶ 29, 35. N.S. also has an IEP, which requires him to have a one-to-one aide with him at all times while at school. Id. at ¶ 30.

   a. N.S.' Attacks on S.J.K.H.

The Amended Complaint alleges five times that N.S. attacked S.J.K.H.

First Attack: On October 9, 2018, N.S. physically confronted S.J.K.H. by either knocking her down or grabbing her by the waist, which scared her and caused her to drop her laptop or tablet. Id. at ¶ 31. This occurred in front of their homeroom teacher and N.S.' aide. Id. The aide took N.S. to Lazar's office and reported the event. Id. Neither the teacher nor Lazar contacted Parents about the incident and now deny that it happened. Id.

Second Attack: On October 15, 2018, N.S. grabbed S.J.K.H. from behind and choked her to the ground before or during their math class. Id. N.S.' aide was not present. Id. No one from Greenfield reported this incident to Parents on that day, though S.J.K.H. later told Parents and her Special Education teacher about it. Id. Parents told Lazar about the first two attacks on October 16, 2018. Id. Lazar denied knowledge of them but said he would investigate. Id. Two days after that, S.J.K.H. went to a pre-scheduled doctor's appointment and told her doctor about the attacks. Id. She also complained about persistent hip pain. Id.

Third Attack: In music class on October 19, 2018, the instructor asked all the students to go sit down on the carpet. Id. While doing so, N.S. forced S.J.K.H. down to the carped, pushed her onto her stomach, then sat down on her stomach. Id. The teacher did not intervene. Id. Instead, N.S.' aide had to struggle to get N.S. off of S.J.K.H., before taking him to Lazar's office. Id. After overhearing the aide in the Lazar's office, S.J.K.H.'s homeroom teacher went to find

S.J.K.H. and take her to the nurse's office, where S.J.K.H. received an ice pack. Id. The nurse, teachers, and Lazar all failed to call Parents to alert them of this incident. Id.

Later that day, S.J.K.H.'s Special Education teacher called Parents to inform them that S.J.K.H. and N.S. were "wrestling," but did not tell her that S.J.K.H. had needed the nurse's care. Id. She told Parents to keep S.J.K.H. away from N.S. Id. She also informed Parents that N.S. would be moved to a new homeroom class. Id. On October 21, 2018, Lazar emailed Parents and said that "[w]e believe that the other child [N.S.] was playing out a fantasy in his head that carried over to the real world" and that N.S. would be reassigned to another homeroom class. Id.

Fourth Attack: The combined fifth grade class (including both N.S. and S.J.K.H.'s homeroom groups) went on a field trip to the Prince Theater on October 22, 2018. Id. Before the trip departed, S.J.K.H.'s father spoke with Lazar and each of the three fifth grade teachers on the trip to ensure that S.J.K.H. would not be in danger around N.S. on the trip. Id. The three teachers all assured him they would watch N.S. Id. But when the trip ended, and the students were back at school and still in the schoolyard, N.S. attacked S.J.K.H. again. Id. He pushed her down to the ground with his forearm across her neck, causing S.J.K.H.'s head to snap back and hit against the ground. Id. N.S.' aide was not present. Id.

One teacher ran up to get N.S. off of S.J.K.H. Id. No one gave S.J.K.H. any medical attention; the teachers simply admonished her for not heading directly back to her classroom. Id. The school did not contact Parents and never filed an official report. Id.

When she came to pick her daughter up after school, S.J.K.H.'s mother heard about the attack from several students. Id. She went to go talk to Lazar, or any other administrator, but could not find them. Id.

On October 23, 2018, S.J.K.H.'s father met with Lazar. Id. Lazar assured him that N.S. would receive new school start and stop times to make sure he would not be outside school when S.J.K.H. was coming or going to class. Id. The father requested a safety plan for his daughter, but Lazar refused to implement one. Id.

Fifth Attack:  On October 26, 2020, S.J.K.H. and her father were waiting in line to buy tickets for a school dance when N.S. came up behind her and put her in a chokehold. Id. N.S.' aide was not present, and the school's security personnel failed to assist S.J.K.H. or her father. Id. The father managed to remove N.S. from S.J.K.H., but only after she had sustained marks on her neck, could not breathe, and was generally hurt. Id. Although Lazar was only ten feet away during this incident, he did not help, offer to call medical assistance, or suspend N.S. Id.

S.J.K.H.'s father called the police and filed a police report immediately after the attack. Id. S.J.K.H.'s mother came to the school and took S.J.K.H. to the hospital. Id. N.S.' mother, who was present for the attack, elected to keep N.S. home for the next two weeks on her own intiative. Id.

    b.  Aftermath of the Attacks

Following the attacks, Parents made multiple complaints regarding harassment of S.J.K.H. to the District and the administrators of Greenfield. Id. at ¶ 32. On October 29, 2018, Parents met with Lazar and requested that Greenfield provide a one-on-one aide for S.J.K.H. to ensure her safety, as well as transferring N.S. to another school. Id. at ¶ 34. Lazar replied "absolutely not" to the requests. Id.

When the District investigated the attacks, it relied solely on Lazar to conduct the investigation. Id. at ¶ 35. Lazar did not compile any teacher witness reports of the incidents. Id.

Lazar's report, which the District shared with Parents on November 6, 2018, found that N.S.' attacks were a "manifestation of his disability." Id.

At one point, on November 7, 2018, a stranger approached S.J.K.H. when she was in the hall of the school after cello practice and told her "I am sorry [] what happened to you, I heard." Id. at ¶ 37 (brackets in original). This interaction was not in the presence of any other adult or school employee and gave S.J.K.H. nightmares. Id.

Parents met with Lazar and other District representatives, including a liaison for the Special Education Administrator for the district, over the next two months. Id. at ¶¶ 38, 40, 42. Lazar continued to refuse to provide a safety plan for S.J.K.H. Id. at ¶¶ 38, 42.

On or around January 23, 2019, Lazar told Parents that N.S. was no longer a student at Greenfield. Id. at ¶ 44. The next day, S.J.K.H. suffered a mini-stroke episode, and she did not return to school on a full-time basis through the end of that school year. Id. at ¶ 45. Instead, Parents withdrew her from Greenfield and enrolled her at a cyber charter school. Id. at ¶ 46. At some point following the fifth attack, S.J.K.H.'s doctor diagnosed her with Post Traumatic Stress Disorder stemming from N.S.' unprovoked attacks. Id. at ¶ 31.

### III.   Procedural History

Plaintiffs filed their initial complaint against Defendants on March 18, 2019. ECF 1. The Court, however, granted Defendants' first motion to dismiss the claim, ECF 3, by dismissing most of the claims without prejudice until the parties had proceeded through the proper administrative process. ECF 6. The parties have since done so, and Plaintiffs filed their amended complaint on July 8, 2020. ECF 8.

Presently before the Court is Defendants' Motion to Dismiss Counts II through XI, filed July 22, 2020. ECF 11. Plaintiffs responded in opposition to the motion on August 10, 2020. ECF 14. Defendants have not filed a reply brief.

## IV.     Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Although a court must accept all factual allegations contained in a complaint as true, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Iqbal, 556 U.S. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (citing Twombly, 550 U.S. at 556 n.3) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

## V.     Discussion

Defendants have moved to dismiss ten of Plaintiffs' eleven claims:

I. Appeal of the state administrative agency decision (present motion does not address this claim);

II. Creation of an HEE through sexual harassment;

III. Creation of an HEE through racial discrimination;

IV. Creation of an HEE through disability harassment;

V. Disability discrimination through disparate treatment;

VI. Race discrimination through disparate treatment;

VII. Sexual discrimination through disparate treatment;

VIII. State-created danger injuries under the Fourteenth Amendment;

IX. Denial of due process under the Fourteenth Amendment;

X. Willful misconduct; and

XI. Negligent Infliction of Emotional Distress.

The challenged claims fall into four categories: creation of an HEE (Counts II–IV, against District); discrimination through disparate treatment (Counts V–VII, against District); constitutional claims (Counts VIII and IX, against all defendants); and state tort claims (Counts X and XI, against Lazar). The Court will address each of these in turn.

a. Creation of an HEE (Counts II–IV)

An HEE claim arises where a student faces harassment at school "that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victim students are effectively denied equal access to an institution's resources and opportunities." Katchur v. Thomas Jefferson Univ., 354 F. Supp. 3d 655, 663–64 (E.D. Pa. 2019) (Baylson, J.) (citations omitted). Plaintiffs contend that S.J.K.H. faced extensive bullying based on her sex, race, and disability. They also contend that Defendants'

failure to prevent that bullying created an HEE.  For the reasons outlined below, the Court will DENY Defendants' motion to dismiss Count II, but will DISMISS Counts III and IV without prejudice with leave to amend.

      i.    Sex-Based HEE

For Plaintiffs' claim for creation of an HEE for sex-based discrimination to survive, the pleadings must allege that an appropriate representative of a federally funded school had actual knowledge of severe sex-based harassment but acted with "deliberate indifference" to it, such that the harassment "effectively barred the victim's access to an educational opportunity or benefit." See Roe v. Penn. State Univ., Civ. Act. No. 18-2142, 2019 WL 652527, at *4–5 (E.D. Pa. Feb. 15, 2019) (Kelly, J.) (quoting Hill v. Cundiff, 797 F.3d 948, 970 (11th Cir. 2015)).

Defendants argue that S.J.K.H.'s harassment was not sexual in nature, Defs.' Br. at 15, and that "the District responded appropriately," *i.e.* was not deliberately indifferent. Id. at 16.  But, as Defendants concede, these arguments are fact-intensive and are not appropriate at this phase of the litigation.  See, e.g., Defs.' Br. at 13 (sexual discrimination "requires a 'more intensive factual analysis'") (quoting Andrews v. City of Phila., 895 F.2d 1469, 1482 n.2 (3d Cir. 1990)).  Plaintiffs assert allegations upon which a reasonable factfinder could find each element of the claim satisfied, such as discussions about N.S. "liking" and having a "fantasy" about S.J.K.H.  These are sufficient to survive the motion to dismiss.  The Court will DENY Defendants' motion to dismiss as to Count II.

      ii.    Race-Based and Disability-Based HEE

Race- and disability-based HEE claims each follow similar tests as sex-based HEE claims, including the requirement that the discrimination in question be "based on" that protected trait. See Cabrea-Diaz v. Penn Kidder Campus Jim Thorpe Sch. Dist., Civ. Act. No. 3:08-2192, 2010

9

WL 5818289, at *8, *11 (M.D. Pa. Aug. 9, 2010). Defendants point to this important distinction: while Plaintiffs allege facts that could support a conclusion of sex-motivated harassment, they failed to allege any indicating that harassment was based on S.J.K.H.'s race or disability. In alleging race-based discrimination, Plaintiffs assert only that "N.S.' conduct was motived by the fact that S.J.K.H. is African American." Am. Compl. at ¶ 68. Plaintiffs' conclusion cannot stand alone without factual allegations. Twombly, 550 U.S. at 570. And Plaintiffs' make no allegation that N.S.' bullying of S.J.K.H. stemmed from her disabilities, only that the harms were more significant as a result. It is not enough to allege that the victim was disabled and harassed, the harassment itself must be "based on" that disability. Cabrea-Diaz, 2010 WL 5818289, at *11. Without any factual allegations underscoring that S.J.K.H. suffered from an HEE through harassment based on her race or disability, the Court will DISMISS Counts III and IV without prejudice and with leave to amend.

    b. Discrimination through Disparate Treatment (Counts V–VII)

Plaintiffs also claim that District discriminated against S.J.K.H. based on her sex, race, and disabilities.

> To plead a prima facie case of disparate treatment in an educational setting, a plaintiff must allege that "(1) he is a member of a protected class; (2) he suffered an adverse action at the hands of the defendants in his pursuit of his education; (3) he is qualified to continue his pursuit of his education; and (4) he was treated differently from similarly situated students who are not members of a protected class."

David v. Neumann Univ., 177 F. Supp. 2d 920, 929 (E.D. Pa. 2016) (Robreno, J.) (citation omitted). Whether for sex-, race-, or disability-based discrimination, a showing that the plaintiff was treated differently than a "similarly situated" student creates an inference that the defendant acted with discriminatory intent. See, e.g., id. (race-based); Mahan v. City of Phila., 296 F. Supp.

10

3d 712, 719 (E.D. Pa. 2017) (Rufe, J.) (sex-based); Jackson v. Planco, 660 F. Supp. 2d 562, 577–78 (E.D. Pa. 2002) (Dalzell, J.) (disability-based).

For each of the disparate treatment claims, Defendants argue that plaintiffs failed to identify a substantially similar individual against whom S.J.K.H.'s treatment can be measured. Defs.' Br. at 19–20, 22, 23. They argue that Plaintiffs' proposed point of comparison, N.S., is not a substantially similar individual because "NS was the harasser and SJKH was the victim;" the two have "profoundly different types of disabilities;" and N.S., unlike S.J.K.H., had his schedule changed in response to his attacks. Id. at 19–20. But Plaintiffs can maintain that N.S. is a similarly situated individual on each claim: they have alleged facts to support the conclusion that Defendants accommodated a male student but not a female student; a White student but not a Black student, and a student with one set of disabilities but not a student with another set of disabilities.[1]

To survive a motion to dismiss, Plaintiffs need only "allege facts sufficient to make plausible the existence of . . . similarly situated parties." Borrell v. Bloomberg Univ., 955 F. Supp. 2d 390, 405 (M.D. Pa. 2013) (quoting Perano v. Twp. of Tilden, 423 F. App'x 234, 238 (3d Cir. 2011)) (emphasis added).[2] They have done so. The Court will DENY Defendants' motion to dismiss Counts V–VII.

---

[1] Although N.S. is also disabled, he has different disabilities than S.J.K.H. Defendants allegedly discriminated against S.J.K.H. based on her specific disabilities, so N.S. can be treated as a relevant "similarly situated individual" for that disparate treatment analysis. See, e.g., Mingus v. Butler, 591 F.3d 474, 483 (6th Cir. 2010) (disparate treatment analysis can include "other prisoners with different disabilities").

[2] It is appropriate to postpone a final "fact-intensive inquiry" into "whether an individual is 'similarly situated' to another individual" until after the motion to dismiss. Id. (citations omitted). The Court will forgo making that final, fact-intensive determination here.

    c. <u>Constitutional Claims (Counts VIII and IX)</u>

      i. <u>State-Created Danger</u>

Plaintiffs allege that Defendants, as government actors, created a danger for S.J.K.H. by permitting N.S. to continue attacking her, in violation of her substantive due process rights under the Fourteenth Amendment. Pls.' Br. at 19–20.

A school may be liable for injuries to a student under the Fourteenth Amendment where the school "creates or enhances a danger to the student." <u>Morrow v. Balaski</u>, 719 F.3d 160, 177 (3d Cir. 2013). A successful "state-created danger" claim requires that the plaintiff show (1) there was a foreseeable and fairly direct harm that occurred (2) following a state actor behaving "with a degree of culpability that shocks the conscience" (3) to a party in a qualifying relationship with the state, and (4) "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." <u>Id.</u>

Defendants claim that Plaintiffs fail the fourth prong by indicating no "affirmative act" that created a danger for S.J.K.H. Defs.' Br. at 25. In response, Plaintiffs point to three proposed actions from the Amended Complaint: "allowing" N.S. to be on campus without his aide, "leaving" S.J.K.H. without medical or parental assistance after attacks; or "allowing" a stranger to approach S.J.K.H. when she was alone at school. Pls.' Br. at 15. But their verb choice belies the passivity of the actions in question. None of Plaintiffs' referenced actions are <u>affirmative</u> acts. A school's inaction or insufficient action cannot provide a basis for damages under a state-created danger theory. <u>Morrow</u>, 719 F.3d at 178 ("[W]e decline to hold that a school's alleged failure to enforce a disciplinary policy is equivalent to an affirmative act under the circumstances here."). The Court will therefore DISMISS Count VIII without prejudice and with leave to amend.

ii.  Monell Claim

Plaintiffs have also brought a claim under 42 U.S.C. § 1983 alleging that Defendants unconstitutionally deprived S.J.K.H. of her due process rights.  Am. Compl. at ¶ 112.

A Monell claim attributes liability to a governmental agency for its employees' violations of the plaintiff's protected federal rights.  Robinson v. Fair Acres. Geriatric Ctr., 722 F. App'x 194, 197–98 (3rd Cir. 2018).  While a plaintiff must typically indicate that her injury stems from "action taken pursuant to a municipal policy or custom,"[3] a third category of Monell claim permits recovery of damages based on the absence or inadequacy of government policies.  Id. at 198.  These claims require that the plaintiffs allege that a government policymaker

> has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

Id. (alteration in original) (quoting Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003)).

Plaintiffs have made such a claim here regarding Defendants' allegedly insufficient response to N.S.' attacks.  The Court will defer ruling on questions of obviousness, adequacy of response, and reasonableness where Plaintiffs have alleged some facts which, if proven, could lead to those conclusions.  Viewing the allegations in the light most favorable to the non-moving party, Plaintiffs have met their burden for a failure-to-act claim under Monell.  The Court will DENY Defendants' motion as it pertains to Count IX.

---

[3] It is not sufficient to make "conclusory references to a 'policy and/or custom'" to survive a motion to dismiss.  Id.  The Court finds that Plaintiffs failed to plead a policy or custom under the first two theories of Monell liability described in Robinson.

13

d.  State Tort Claims (Counts X and XI)

Plaintiffs next claim that Lazar committed two state law torts: willful misconduct resulting in injury to S.J.K.H. (Count X) and Negligent Infliction of Emotional Distress against S.J.K.H.'s father ("NIED," Count XI). Lazar contends that, as a government employee, he enjoys immunity from these claims.

i.  Willful Misconduct

A government employee, while acting within the scope of his authority, generally enjoys official immunity to the same extent as his "employing local agency" would. 42 Pa. C.S. §§ 8541, 8545. That immunity, however, does not bar liability where the employee's "act constituted a crime, actual fraud, actual malice or willful misconduct." Id. at § 8550.

Plaintiffs allege that Lazar's decisions to keep S.J.K.H in the same classroom as N.S. and V.M. constituted willful misconduct and, therefore, that official immunity does not shield Lazar from Count X. But to prove that Lazar committed willful misconduct, Plaintiffs "must establish that the actor desired to bring about the result that followed, or at least it was substantially certain to follow, i.e., specific intent." Bright v. Westmoreland Cty., 443 F.3d 276, 287 (3d Cir. 2006) (quoting Robbins v. Cumberland Cty. Children & Youth Servs., 802 A.2d 1239, 1253 (Pa. Commw. Ct. 2002)). Plaintiffs do not allege that Lazar "desired" to harm S.J.K.H., but rather that he "was aware that it was substantially certain" that she would be hurt through his failure to separate S.J.K.H. Am. Compl. at ¶¶ 116–117. Even where a government employee "knowingly and deliberately disregarded a known risk," that does not constitute the requisite specific intent that the harm come to pass. Bright, 443 F.3d at 287. Instead, an alleged failure to counteract a known risk constitutes reckless behavior, not willful misconduct, and the employee "would still

14

be entitled to immunity." Id.  The Court finds that official immunity precludes a finding of liability for Lazar under Count X and will DISMISS it with prejudice and without leave to amend.

        ii.      Negligent Infliction of Emotional Distress

In Count XI, Plaintiffs allege that Lazar committed NIED against S.J.K.H.'s father during the fifth attack, as Lazar's inaction caused her father to suffer emotional harm from witnessing the attack on his daughter firsthand.  In support, Plaintiffs rely on Toney v. Chester County Hospital. 36 A.3d 83 (Pa. 2011) (Baer, J.).  They argue that there is a special relationship between Lazar and S.J.K.H.'s father, as a principal and the parent of student with disabilities, sufficient to support a finding of NIED even in the absence of physical impact on the father.

As a preliminary matter, the Toney opinion on which Plaintiffs rely was one in support of affirmance; Justice Baer wrote for half of an evenly divided court.  MDB v. Punxsutawney Christian Sch., 386 F. Supp. 3d 565, 593 (W.D. Pa. 2019) (discussing Toney).  Therefore the opinion holds persuasive, albeit not binding, authority on Pennsylvania law.  Id.  The Court will treat it as such here.

Justice Baer's opinion stated that Pennsylvania law recognizes NIED claims even in the absence of a physical impact on the victim in limited circumstances where "there exists a special relationship where it is foreseeable that a breach of the relevant duty would result in emotional harm so extreme that a reasonable person should not be expected to endure the resulting distress." Toney, 36 A.3d at 84.  There, the relationship in question was that between obstetricians and their patient, a soon-to-be mother.  Id. at 85.

Since Toney, however, courts have largely declined to expand this "special relationship" theory of NIED outside the "narrow grounds" of the medical context, see Kling v. Univ. of Pittsburgh Med. Ctr., Civ. Act. No. 2:18-cv-01368-MJH, 2020 WL 4218004, at *2 (E.D. Pa. July

15

23, 2020) (Horan, J.) (citing Hershman v. Muhlenberg Coll, 17 F. Supp. 3d 454 (E.D. Pa. 2014) (Stengel, J.)), with a second narrow category existing between adoption agencies and adoptive parents. See Hershman, 17 F. Supp. 3d at 460 (citing Madison v. Bethanna, Inc., Civ. Act. No. 12-01330, 2012 WL 1867459 (E.D. Pa. May 23, 2012) (Buckwalter, J.)). These "special relationships" arise where a party has a "duty to take care of the feelings of" the purported victim. MDB, 386 F. Supp. 3d at 594.

It is unclear whether Pennsylvania would recognize the duty that Plaintiffs propose. "[A]bsent special circumstances . . . , the Pennsylvania courts would not extend liability for the NIED tort to a case involving a relationship between a school and its student." Id. Plaintiffs, however, allege special circumstances arising from S.J.K.H.'s disabilities, such that the school may have a special duty to protect the emotional well-being of the parents who entrust the school to take care of their vulnerable child.[4] These could be sufficient for this Court to conclude that a special relationship exists for this claim.

The Court, however, declines to rule on whether Plaintiffs have pleaded a sufficient "special relationship" to sustain an NIED claim under Toney here, based on Lazar's dispositive reliance on official immunity.

Official immunity bars negligence claims stemming from nine enumerated categories against government agencies. 42 Pa. C.S. § 8542. These categories are vehicle liability; care, custody, or control of personal property; real property; trees, traffic controls, and street lighting;

---

[4] Although Madison limited its holding to the adoption agency-adoptive parents relationship, 2012 WL 1867459 at *12, Plaintiffs that Lazar may have owed a special duty to a disabled student's *parents*, even if not to the student herself, based on the high level of trust required in the relationship.

16

utility service facilities; streets; sidewalks; care, custody, or control of animals; and sexual abuse. Id.

This immunity applies with equal force to claims against government employees for actions within their duties. Id. at § 8545. "If an act does not fall into one of these enumerated categories, a local agency and its employees are immune from liability for that negligent act." McKay v. Krimmel, Civ. Act. No. 10-2112, 2020 WL 1479133, at * (E.D. Pa. Mar. 25, 2020) (Pratter, J.). This includes NIED claims. See Vega v. Columbia Borough, Civ. Act. No. 08-cv-05932, 2009 WL 2143549, at *5 (E.D. Pa. July 15, 2009) (Golden, J.) (collecting cases dismissing NIED); see also DiJoseph v. City of Phila., 947 F. Supp. 834, 843–44 (E.D. Pa. 1996) (Brody, J.) (Officials are "immune from suit on the basis of negligence and negligent infliction of emotional distress under § 8545.").

Because Plaintiffs' NIED claim does not fall under the nine enumerated exceptions to immunity under § 8542(b), Lazar is immune to Count XI; the Court need not determine whether S.J.K.H.'s father and Lazar had a qualifying "special relationship" sufficient to sustain an NIED claim under Toney. The Court will DISMISS Count XI with prejudice and without leave to amend.

## VI.     Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part as follows:

- DENIED as to Counts II, V, VI, VII, and IX;
- GRANTED, without prejudice and with leave to amend, as Counts III, IV, and VIII;
- GRANTED, with prejudice, as to Counts X and XI.

An appropriate Order follows.

O:\CIVIL 19\19-1115 Henry v School District\19cv1115 Memorandum re MTD 10272020.docx