IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID AND RENEE HENRY,** individually and as guardians and parents of S.J.K.H, a minor<br><br>v.<br><br>**SCHOOL DISTRICT OF PHILADELPHIA and DANIEL J. LAZAR, in his official and individual capacities** | **CIVIL ACTION**<br><br>**NO. 19-1115** |

**MEMORANDUM RE: MOTION TO DISMISS**

Baylson, J.                                                                                            January 19, 2021

### I.     Introduction

The present case concerns a series of violent attacks on a minor student while at school. Parents, David and Renee Henry, have sued her school district and her school's principal for their alleged roles in permitting the attacks.  In the present stage, Defendants move to dismiss two of those claims under Rule 12(b)(6):  a racial-discrimination-based Hostile Education Environment claim under Title VI of the Civil Rights Act (Count III, "HEE") and a State-Created Danger injury under the Equal Protection Clause (Count VIII, "State-Created Danger claim").

Plaintiffs satisfied the requirements to survive a motion to dismiss on the HEE claim but not the State-Created Danger claim.  For the former, the deferential standard of a motion to dismiss permits the Court to reasonably infer that the student's attacker, who has attacked multiple African American or Hispanic students but no White students (at a majority-White school), did so because of their race.  For the latter, however, Plaintiffs have failed to identify a qualifying "affirmative

1

act" by which a state actor caused Plaintiffs' injuries. The Court therefore DENIES in part and GRANTS in part the present motion.

## II.     Factual Background

Assuming as true Plaintiffs' allegations, S.J.K.H. is a minor student who previously attended Albert M. Greenfield School ("Greenfield"). Second Am. Compl. (ECF 17) at ¶ 4. She is an African American female with multiple disabilities. Id. at ¶¶ 8, 10.

Greenfield is a public school in the School District of Philadelphia. Id. at ¶ 4. The school's student population is 54% White, 20% African American, 12% two races, 9% Asian, and 5% Hispanic. Id. at ¶ 66. Daniel Lazar is the principal at Greenfield. Id. at ¶ 6. During her time at Greenfield, S.J.K.H. was physically attacked and bullied by at least two students: V.M. and N.S. Id. at ¶¶ 23, 31.

N.S. is a former student at Greenfield who is White, id. at ¶ 29, and has a disability or disabilities, id. at ¶ 35. In the years before the attacks, N.S. had been in a self-contained autism support class at Greenfield. Id. at ¶ 97. It was only in fifth grade, the year that he attacked S.J.K.H., that Greenfield first placed N.S. in an "inclusionary environment," i.e. classes with a mix of students who did and did not have disabilities. Id. at ¶ 99.

Towards the beginning of their fifth-grade year, N.S. physically attacked S.J.K.H. five times within three weeks. Id. at ¶ 31. In each case, Greenfield employees did little or nothing to protect S.J.K.H. during the attacks and failed to report several of the attacks to S.J.K.H.'s parents. Id.

- Greenfield did not implement new measures to protect S.J.K.H. after the first and second attacks. Id.
- After the third attack, Greenfield moved N.S. into a different homeroom to isolate him away from S.J.K.H. Id.
- After the fourth attack, Lazar staggered N.S.' arrival and departure times for school to minimize time spent around S.J.K.H. Id.

- After the fifth attack, Greenfield did not implement any new disciplinary or security measures to protect S.J.K.H. from N.S., id. at ¶¶ 31, 34, although N.S.' mother voluntarily elected to keep him home for over two weeks, id. at ¶ 31.

About three months after the final attack, N.S. left Greenfield. Id. at ¶ 44. S.J.K.H.'s parents withdrew her from Greenfield soon afterwards for medical reasons. Id. at ¶¶ 45, 46.

While at Greenfield, N.S. attacked two or three students, including S.J.K.H., who are African American and/or Hispanic. Id. at ¶ 68. He did not attack any White students. Id. at ¶ 69.[1]

### III.  Procedural History

Plaintiffs filed their initial complaint against Defendants on March 18, 2019 on behalf of themselves and S.J.K.H. ECF 1. The Court, however, granted Defendants' First Motion to Dismiss the claim, ECF 3, by dismissing most of the claims without prejudice until the parties had proceeded through the proper administrative process. ECF 6. The parties did so, and Plaintiffs filed their amended complaint. ECF 8.

The Court next decided on Defendants' Second Motion to Dismiss, ECF 11. In its opinion and order, the Court denied the motion to most claims, but granted dismissal without prejudice as to three counts — race-based HEE, disability-based HEE, and State-Created Danger — and with prejudice as to two common law tort claims. ECF 15. In doing so, the Court found that Plaintiffs had failed to plead factual allegations to support an inference that S.J.K.H. suffered from an HEE that was based on her race or disability and that they had failed to identify an "affirmative act" that Defendants committed that created a danger for S.J.K.H.

---

[1] The Court reaches this interpretation of Plaintiffs' allegations by reading Paragraphs 68 and 69 in conjunction, thereby avoiding unnecessary disagreements over legal significance of Plaintiffs' language. Compare Second Am. Compl. at ¶ 68 ("protected class members, i.e. African American or Hispanic"); with id. at ¶ 69 ("N.S. did not attack non-protected class students."). Plaintiffs have confirmed this was their intended meaning. Pls.' Response Br. (ECF 19) at 9–10 ("non-protected class, i.e. Caucasian").

Plaintiffs amended their complaint a second time, dropping their disability-based HEE claims and adding further allegations in support of their race-based HEE and State-Created Danger claims. ECF 17. Defendants moved to dismiss both of these re-alleged claims for failure to state a claim. ECF 18. Plaintiffs responded in opposition. ECF 19. Defendants have not submitted a reply brief in support.

**IV.   Legal Standard**

In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Although a court must accept all factual allegations contained in a complaint as true, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Id. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (citing Twombly, 550 U.S. at 556 n.3) ("We caution that[,] without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

4

**V.     Discussion**

Defendants have moved to dismiss two claims: race-based HEE (Count III) and State-Created Danger (Count VIII).

    a.  Race-Based HEE (Count III)

"An HEE claim arises where a student faces harassment at school 'that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victim students are effectively denied equal access to an institution's resources and opportunities.'" ECF 15 at 8 (quoting Katchur v. Thomas Jefferson Univ., 354 F. Supp. 3d 655, 663–64 (E.D. Pa. 2019) (Baylson, J.)).  For a race-based HEE Claim, naturally, the harassment must be "based on" the victim's race.  See Cabrea-Diaz v. Penn Kidder Campus Jim Thorpe Sch. Dist., Civ. Act. No. 3:08-2192, 2010 WL 5818289, at *8, *11 (M.D. Pa. Aug. 9, 2010).  Defendants argue that Plaintiffs have failed to state that N.S.' attacks were "based on" S.J.K.H.'s race.[2]

In response, Plaintiffs argue that, despite only a quarter of the school's population being African American and/or Hispanic, N.S. has allegedly attacked multiple African American and/or Hispanic students.[3]  Over half of the student population is White, but N.S. has not allegedly attacked any White students.

Without more evidence of N.S.' behavior or statements, this is a close call under Twombly-Iqbal.  Nonetheless, the concentration of his alleged attacks on African American and/or Hispanic

---

[2] Defendants also note that Plaintiffs allege no facts to support a conclusion that V.M., an African American student who also allegedly assaulted S.J.K.H., did so on the basis of race.  As Plaintiffs do not contest this point, the Court will dismiss Count III to the extent that it relies on V.M.'s actions.

[3] This number could be as high at 37%, as Plaintiffs claim 12% of the school is biracial.  Reading the complaint in the light most favorable to Plaintiffs, the Court will assume the lower percentage.

students — and only on African American and/or Hispanic students — provides sufficient evidence by which the Court can reasonably infer a racial motivation. The Court will therefore DENY Defendants' motion to dismiss Count III, but, in doing so, it also notes that Plaintiffs will need to provide more concrete evidence of a racial motivation to succeed in later stages of this litigation.

b. State-Created Danger (Count VIII)

As stated in the prior motion to dismiss ruling, a school district "may be liable for injuries to a student under the Fourteenth Amendment where the school 'creates or enhances a danger to the student.'" ECF 15 at 12 (quoting Morrow v. Balaski, 719 F.3d 160, 177 (3d Cir. 2013)). Vitally, a claim under this theory requires that "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." Morrow, 719 F.3d at 177 (emphasis added).

Defendants argue that Plaintiffs have failed to allege a qualifying affirmative act. Plaintiffs argue that Defendants acted affirmatively by removing N.S. from his pre-fifth-grade placement in a self-contained support class and placing him in an inclusionary classroom environment, in which he allegedly attacks S.J.K.H. several times.

But merely placing a student in a classroom environment with his victim is not an affirmative act by which a state actor can be liable for creating danger for students. In Roquet v. Kelly, the court rejected arguments that "actively placing [victim] and [assailant] into the same gym class, despite the long history of bullying" or "placing [assailant] in an unstructured and unsupervised environment thereby rendering [victim] and other students more vulnerable to danger" could constitute the requisite affirmative act for liability. See No. 4:11-cv-1763, 2013 WL 5570269, at *7–8 (M.D. Pa. Oct. 9, 2013); see also Morrow, 719 F.3d at 177–78 (permitting

a student to return to his victim's class after a suspension for a prior attack is not an affirmative act). To hold otherwise would significantly expand schools' potential liability for their students' actions, and the Court declines to do so here. Count VII is DISMISSED with prejudice.

## VI. Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part as follows:

- DENIED as to Count III; and
- GRANTED, with prejudice, as to Count VIII.

An appropriate Order follows.

O:\CIVIL 19\19-1115 Henry v School District\Memorandum re Third MTD.docx